**UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| LASHIFY, Inc.,<br><br>    Plaintiff<br><br>v.<br><br><br>PRO LASH, Inc., et al,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER REGARDING DISCOVERY MOTIONS [ECF 93, 107, 108, 109, 110, and 111], AND SETTING SUPPLEMENTAL HEARING ON ECF 125**<br><br>Case No. 2:24-cv-00016-HCN-CMR<br><br>Judge Howard C. Nielson, Jr<br><br>Chief Magistrate Judge Cecilia M. Romero |

This matter is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) (ECF 12). On April 15, 2026, the court heard oral argument on various pending motions (ECF 93, 107, 108, 109, 110, and 111) filed by Plaintiff Lashify, Inc. (Lashify or Plaintiff), and one pending motion (ECF 125) filed by Defendants Bella Lash Extensions LLC and Pro Lash Inc. (collectively referred to as Pro Lash or Defendant). After consideration of the relevant briefing and supplemental filings after the hearing (ECF 139 and 141) and arguments raised during the hearing, the court enters the following Order addressing the discovery motions at ECF 93, 107, 108, 109, 110 and 111.[1]

### I.    ECF 93, 107, 108, AND 110

**A.  Legal Standard**

The following standard applies to the Motions at ECF 93, 107, 108, 109, and 110:

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information

---

[1] The court will address the Motion to Strike (ECF 125) in a separate order, as a supplemental hearing is required to resolve the Motion to Strike.

sought may be relevant to a party's claim or defense." *Dutcher v. Bold Films LP*, No. 2:15-CV-110-DB-PMW, 2017 WL 1901418, at \*1 (D. Utah May 8, 2017) (citation and internal quotation marks omitted). However, if the discovery requested is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," the court must limit the frequency or extent of discovery. Fed. R. Civ. P. 26(b)(2)(C)(i). "Relevant considerations include 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Mod. Font Applications v. Alaska Airlines*, No. 2:19-CV-00561-DBB-CMR, 2020 WL 3065157, at \*3 (D. Utah June 9, 2020) (citing Fed. R. Civ. P. 26(b)(1)).

### B. ECF 93: Lashify's Short Form Discovery Motion to Compel Regarding Requests for Manufacturing Information

The court GRANTS IN PART ECF 93, Lashify's Short Form Discovery Motion to Compel Pro Lash to supplement its discovery responses regarding Pro Lash's manufacturing process for its Accused Products (ECF 93). Specifically, Lashify requests that Pro Lash be ordered to: "(1) supplement its response to Interrogatory No. 2 to sufficiently describe how its manufacturers make each Accused Product, including any step that uses heat, how the lashes are attached to the base of the extension, what the base is made of, and whether any adhesives or matrix materials are used and the chemical composition of any adhesives; (2) produce three samples of any adhesive or matrix material used to form the base in its raw form to allow testing (RFP No. 73); (3) produce all documents describing or documenting the manufacturing methods used to make the Accused Products, sufficient to identify how the lashes are attached to the base of the extension, the identity of any adhesives or matrix materials used, and any step that involves applying heat (RFP Nos. 6,

2

9, 10); and (4) electronically produce the manufacturing documents it has withheld and only made available for in-person inspection" (ECF 93 at 1-2).

The court notes that ECF 93 does not name any specific manufacturers by name, but after the hearing, the court interprets ECF 93 to be requesting the information from Interwork, located in the Republic of Korea (*see* ECF 107); Ningbo Showwell (Showwell), located in China (*see* ECF 108); and Royal Korindah, located in the Republic of Indonesia (*see* ECF 109). The court finds the requested information in ECF 93 is relevant and proportional for all three of the above-listed manufacturers.

In regard to relevance, which Pro Lash did not contest in its response (ECF 100), the court finds that, given the allegations at issue, the information requested in ECF 93 seeks Pro Lash's manufacturer information and is relevant to this matter. The court also finds that ECF 93 is proportional. Pro Lash asserts various arguments why the requested information is not relevant, but the court does not find any of them persuasive.

Pro Lash argues there is a *de minimis* amount in controversy to support its proportionality argument, but there is no explanation or substantiation of what that means, and Pro Lash's arguments during the hearing were not sufficient for the court to find that the amount in controversy in this case weighs against the proportionality of the requested evidence. For example, no dollar figure is proposed for production costs, nor is any other substantiation provided. Pro Lash only proffers that there has been a settlement with a non-party manufacturer, which is uncontested, but that does not justify a ruling that the requested information is not proportional, given that there was no evidence regarding the current amount in controversy.

Next, at the hearing Pro Lash expanded its proportionality argument asserting that the requested information is not proportional because it produced its technology recipe on the curling

process where it alleges no heat is used, has already produced certain manufacturing agreements and processes indicating that heat is not being used, and has allowed Lashify an in-person inspection of the products (*see* ECF 100 at 2–3). In addition, they have served Interrogatory No. 1 asking Lashify to explain if it disagreed with any of Pro Lash's contentions, but no response had been received at the time of filing the Opposition (*id.*). During the hearing, it was made clear that Pro Lash was referencing its manufacturing agreement with Showwell, which provides that Showwell shall not use any form of heat, whether direct or indirect, deliberate or incidental, at any stage of manufacturing (*see* ECF 96 at 8). At the hearing, Pro Lash vehemently argued that Lashify had not shown why Showwell's manufacturing information was proportional, given all the above-referenced information that had already been produced.

During the hearing, Lashify argued that the discovery into Showwell, as well as the two other manufacturers, was proportional because the manufacturing agreements do not support their experts' findings regarding the use of heat, and they should be permitted to verify this information. Lashify also argues that the responses from the 30(b)(6) representative made during the February 5, 2026, deposition left lingering and unanswered questions regarding the process Showwell is using to make the lashes. Specifically, at the deposition of Hayden Finlinson, he testified that the manufacturing facilities have not been viewed and that he therefore did not "know the exact process" used, except that the manufacturers must produce the lashes in accordance with the manufacturing agreements. Hayden Finlinson Dep. (Finlinson Dep.), Feb. 5, 2025, 268:9–20. Lashify also argued that when it inspected the products in person, it did not know at the time which samples were produced by which manufacturer. The court finds Lashify's arguments persuasive and determines that discovery regarding all three manufacturers, as requested in ECF 93, is relevant and proportional. The court concludes that Pro Lash's stance is unfounded because it

4

appears that its aim is to produce information supporting its position and instructions, without giving Lashify the opportunity to test that information. This is especially concerning given the 30(b)(6) testimony. While Pro Lash has produced information, in these circumstances, it is not sufficient to argue that what was produced is "enough." There are still outstanding questions about the manufacturing processes that Lashify is entitled to request and seek to obtain answers to.

Finally, Pro Lash also argues that it does not possess, control, or have access to the requested information because it is in the possession of foreign manufacturers that it does not control. Lashify disputes this and in support, Lashify cites *Braun v. Medtronic Sofamor Danek, Inc.*, No. 2:10-CV-1283, 2013 WL30155 (D. Utah Jan. 2, 2013), in which this court determined that documents are "within a party's control if the party has . . . control, or the legal right to obtain the documents on demand." *Id.* at *8 (internal citation and quotations omitted). Lashify argues that, because the requested information is from Pro Lash's manufacturers, Pro Lash, under its manufacturing agreements, may require the manufacturers to confirm compliance with its manufacturing specifications. Pro Lash also cites to a recent 30(b)(6) deposition wherein the representative was asked if "Pro Lash reached out to [Showwell] to ask for documentation showing the methods that they're using to create the Pro Lash products?" to which the witnesses responded, "not to his knowledge." Finlinson Dep., 265:6–13. In court, counsel for Pro Lash indicated he believed such information had been requested but admitted he did not make the inquiry himself. When further asked about whether Pro Lash had such control over the documents, counsel for Pro Lash asserted that it did not, given that the manufacturers are foreign third parties wholly independent of Pro Lash.

While the court is cognizant that the manufacturers are not within the United States and are wholly independent of Pro Lash, the standard is not whether they are foreign, independent, or

5

separate entities. The determination, as explained in the *Braun* case, is whether Pro Lash has "control" over or a "legal right" to the requested documents if demanded from its manufacturers. 2013 WL30155, at *8. Pro Lash has not made it clear that they lack legal control or a legal right to the documents, especially given that the recent 30(b)(6) deponent was not aware that such a request had been made. While the deposition testimony may support that a "video or photos of the facility" may have been made, Finlinson Dep., 267:24–25; 268:1, that is not the same as Pro Lash demanding the information requested in this motion.

Accordingly, the court ORDERS Pro Lash to make a written demand for the requested documents from its manufacturers and to make every effort to obtain them. If Pro Lash is unable to obtain the requested documents detailed in ECF 93 from its manufacturers, it must file a certification with the court within 15 days of today's ruling. The certification must detail their demand and efforts to obtain the requested documents, including why Pro Lash does not have a legal right to the documents.

This ruling addresses Pro Lash's concerns regarding delay, as having Pro Lash demand the documents directly would be the most efficient way to obtain them, rather than having Lashify seek them from the manufacturers themselves, which could result in further delays and extensions to the scheduling order.

### C. ECF 107, 108, AND 109: Motions for Foreign Discovery[2]

In light of the court's ruling on ECF 93 and not knowing the outcome of Pro Lash's demand for the documents from the manufacturers, the court GRANTS IN PART Lashify's three motions

---

[2] In response to two of the motions for foreign discovery, Pro Lash indicates it does "not oppose Lashify seeking discovery in the Republic of Korea [, and in the Republic of Indonesia], but Defendants do oppose any attempt by Lashify to use such discovery as a basis for delay (ECF 115 at 1 and 117 at 1). At the hearing, Lashify took a different position, arguing such discovery should not be permitted at all, not only as to Showwell (which was argued at ECF 116), but also for the other two manufacturers in Korea and Indonesia. The court does not consider this change of position well-founded. The court issues its ruling regarding Pro Lash's delay arguments below as part of addressing

requesting judicial assistance to engage in foreign discovery (ECF 107, 108, and 109).[3] The court finds that the requested information in each request is relevant and proportional, with some modifications as discussed herein. The requests to the three manufacturers at present are not narrowly tailored, as Lashify requests "all" documents relating to manufacturing, materials, sales, and "any" communications with Defendants. The court agrees with Pro Lash that such requests are not limited and must be narrowed to only include materials and communications that are relevant to claims, defenses, and limited by time. When asked whether the requests could be narrowed, counsel for Lashify agreed.

Accordingly, the court ORDERS Lashify to modify the requests so that they are narrowed in time to only request information starting from the time Pro Lash entered into discussions with the manufacturers to produce the products at issue, and to only include information and documents regarding the manufacturing of the products produced for Pro Lash (i.e., all Defendants). If Lashify does not receive the requested documents directly from Pro Lash within 15 days of today's Order, on day 16, Lashify may issue the requests directly to the three manufacturers identified in ECF 107, 108, 109 with the modifications ordered herein.[4]

### D. ECF 110: Motion to Compel Purchase Orders

Lashify requests that Pro Lash produce its purchase orders and any accompanying documents from its manufacturers from 2022 to the present. Pro Lash contends that the spreadsheet

---

the motion at ECF 111.

[3] With respect to Showwell, Pro Lash argues lack of relevance (ECF 116) making the same arguments it made in its Motion to Strike, which the court will address separately. Under the liberal discovery standard, the court finds the information relevant.

[4] To avoid any additional time delays, Lashify must update the requests consistent with this court's ruling and present them to Pro Lash for a meet and confer within 5 days of today's ruling. If Pro Lash has any concerns with the updated requests, it may request a hearing with the court, which will be heard on an expedited basis. It is the court's expectation that the updated documents be ready for issuance on the 16th day if the documents requested in ECF 93 are not produced directly by Pro Lash.

it produced is a sufficient summary that lists "for each Accused Product, each purchase from each manufacturer, by date, name of supplier, and quantity purchased." Lashify contends that the spreadsheet is insufficient, and when asked why the additional purchase orders and accompanying documents could not be produced, Pro Lash stated that doing so would be burdensome. However, there is no substantiating support. For example, there is no proposed cost of production, time delay, or any other supporting evidence on burden or expense. Moreover, Lashify has explained that it needs the underlying documents to verify the spreadsheet information and determine whether the invoices themselves contain language that may have modified the manufacturing agreements or include any other terms/information or processes. Additionally, if there is a finding of liability against one of the manufacturers, it must be able to verify damages against that single manufacturer. Hence, even assuming there is a cost burden to Pro Lash, it does not outweigh the need for the information articulated by Lashify. Therefore, within 10 days of today's ruling, Pro Lash is to supplement their discovery responses to produce the purchase orders and any accompanying documents from its manufacturers from 2022 to the present, as requested in ECF 110.[5]

## II.    ECF 111: MOTION TO AMEND SCHEDULING ORDER

Lashify seeks a 60-day extension of the remaining pre-claim construction deadlines as of the date the motion was filed, arguing good cause exists because Pro Lash has not produced critical discovery regarding its manufacturing processes, including how lashes are attached and related materials. Lashify also requests an extension, arguing it needs additional time to review the recent ESI production before taking any depositions.

### A.  Legal Standard

---

[5] ECF 110 also requests representative samples, which have already been granted at ECF 137.

Lashify filed its Motion to Amend Scheduling Order on January 30, 2026 (ECF 111), and the deadline for the close of fact discovery is currently scheduled for April 22, 2026 (ECF 83 at 2). Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "This requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006). The Tenth Circuit has explained that good cause "comes into play in situations in which there is no fault—excusable or otherwise," such as by a cause outside the movant's control and where a deadline cannot be met despite the movant's diligent efforts. *Utah Republican Party v. Herbert*, 678 F. App'x 697, 700–01 (10th Cir. 2017); *Zemaitiene v. Salt Lake Cnty.*, Case No. 2:17-cv-00007-DAK-JCB, 2021 WL 914063 at *3 (D. Utah March 10, 2021). "In exercising its discretion, the court considers the relative diligence of the party seeking the change, whether the need for more time was foreseeable or the fault of the moving party, whether refusing the continuance creates a 'substantial risk of unfairness' to the party seeking modification, and whether the party opposing modification might be prejudiced." *Keate v. Wright*, No. 2:23-CV-00305, 2024 WL 4279036, at *2 (D. Utah Sept. 24, 2024). For the following reasons, the court finds that there is good cause to grant a 60-day extension of the remaining pre-claim construction deadlines as of January 30, 2026.[6]

**B. Discussion**

**1. Lashify has been diligent.**

Pro Lash opposes the 60-day extension to the pre-claim construction deadlines as well as

---

[6] When this motion was filed, the final contention deadline had not passed. Since that time, Lashify submitted its final contentions by the February 11, 2026, Scheduling Order deadline (ECF 83) since the court had not issued a ruling. The court understands the argument at the hearing to be that, regardless, Lashify is still requesting a 60-day extension.

the three motions seeking the court's assistance in procuring the foreign discovery from Pro Lash's manufacturers (ECF 107, 108, 109), arguing that Lashify has not been diligent in seeking such discovery (ECF 118). Pro Lash argues Lashify has known about these manufacturers since it produced the manufacturing agreements in mid-August 2025 (ECF 118 at 7) and has not shown why it could not seek such discovery within the court-ordered deadlines (ECF 118 at 7). Furthermore, Pro Lash argues that Lashify delayed ESI discovery, considering the complaint was filed over two years ago.

While the court is cognizant of Pro Lash's concerns regarding diligence, the record does not show a lack of diligence on Lashify's part. While the court notes this is 2024 case, the docket reflects multiple preliminary motions were filed over the 2024 and 2025 time period, prior to the scheduling order being issued (*e.g.*, a preliminary injunction (ECF 22) was filed and then withdrawn (ECF 56), amended complaint (ECF 59), motion to dismiss amended complaint (ECF 61), motion to dismiss counterclaims (ECF 75)). The current Pre-Claim Construction Scheduling Order was not filed until September 25, 2025 (ECF 83). On August 19, 2025, Lashify served Interrogatory Nos. 1 and 2, asking Defendants to "[i]dentify each Accused Product [defined as 'any artificial lash extension product'] you have made, sold, offered for sale, used, or distributed in the United States or imported into the United States," and Interrogatory No. 2 asking Defendants to identify, for each Accused Product, the "person or entity that manufactures the product." ECF 126 at 6. Pro Lash submitted its interrogatory responses on September 25, 2025, which identified the manufacturers, but, prior to that date, on August 15, 2025, produced the manufacturing agreements (ECF 118 at 3-4). On September 17, 2025, Lashify served initial infringement contentions, and on October 1, 2025, Pro Lash served its non-infringement contentions (*id*. at 4). Meet-and-confer efforts took place in November 2025, and Pro Lash raised the possibility of

Lashify's counsel inspecting the foreign manufacturers' facilities (ECF 121 at 7). On December 8, 2025, Pro Lash reiterated that it would reach out to the manufacturers to determine whether they would permit an inspection of the facilities and provide additional documentation of their manufacturing processes (*id*.). Four days later, Pro Lash stated that an inspection of Showwell could not be conducted, and on December 18, 2025, Pro Lash confirmed no inspections with the other manufacturers would be conducted (*id*.). By December 24, 2025, it was clear that the parties were at an impasse, and Lashify filed its first motion to compel (ECF 93) on December 29, 2025.

Upon consideration of the referenced timeline, the court finds that Lashify was sufficiently diligent in attempting to retrieve this discovery and working to move this matter along. For a time, Pro Lash appeared to indicate that it could facilitate an inspection of the facilities and the production of documents from these entities, but once it became clear that Pro Lash could not facilitate discovery, Lashify acted quickly by filing its first motion to compel. At the hearing, Pro Lash argued that Lashify should have simultaneously pursued the discovery and continued to meet and confer, since Pro Lash had always taken the position that it lacked the control to produce the manufacturer information. Such a ruling, however, in these circumstances, would defeat the purpose of the meet-and-confer obligation.

As to the ESI, the ESI protocol was entered on January 26, 2026 (ECF 106), the parties only recently agreed on search terms in February of 2026, the searches were conducted and then despite Pro Lash's warning that the search terms would yield a significant result, Lashify did not narrow the request, which resulted in a significant production happening very recently. The parties have identified the depositions to be taken and have worked on scheduling them. Lashify indicates that the 60-day extension would give it more time to review the significant production before any deposition takes place. The court finds that Lashify has been diligent in seeking discovery

regarding Pro Lash's manufacturing processes and the outstanding ESI discovery.[7]

### 2. Refusing an extension would create a substantial risk of unfairness to Lashify.

The court finds that denying the extension would create a substantial risk of unfairness to Lashify, given the efforts it has made to obtain this discovery. Further, this discovery is highly relevant to supporting its claims of infringement, and not allowing Lashify sufficient time to pursue this discovery would result in a substantial risk of unfairness. This is especially true given the outstanding questions on processes used by the manufacturers that were highlighted in the 30(b)(6) deposition.

### 3. The prejudice to Pro Lash caused by a 60-day extension is not sufficient to deny the Motion to Amend the Scheduling Order.

Lastly, Pro Lash argues that an extension would prejudice it by increasing litigation costs, prolonging proceedings, and allowing shifting theories (ECF 118 at 8). Specifically, it asserts that more time for discovery would lead to more litigation activity, higher expenses, and delays. While there may be some prejudice to Pro Lash caused by the extension, the court does not find that such prejudice outweighs denying the extension, given that this is the first extension, which is modest in duration, and the court has found that Lashify was diligent, and that unfairness would result from not granting the extension.

Accordingly, the court GRANTS Lashify's Motion to Amend (ECF 111) and ORDERS that the remaining pre-construction deadlines as of January 30, 2026, are extended by 60 days from the date of this Order. Lashify is to submit an updated scheduling order consistent with this court's ruling within 3 days of this ruling.

### CONCLUSION

---

[7] At the hearing, Lashify indicated it is not seeking to expand the ESI discovery beyond that to which the parties have already agreed as to the scope of search terms and depositions; rather, more time is needed to review the ESI prior to the depositions.

For these reasons, the court **ORDERS** that:

1.  ECF 93 – Motion to Compel is GRANTED IN PART

2.  ECF 107, 108, 109 for international discovery are GRANTED IN PART

3.  ECF 110 – Motion to Compel is GRANTED

4.  ECF 111 – Motion to Extend Deadlines is GRANTED

In addition, the court sets the following Supplemental Motion Hearing to address Pro Lash's Motion to Strike (ECF 125), which the court has taken under advisement. Accordingly, the court sets a Motion Hearing for April 22, 2026, at 1:00 P.M., via Zoom Conference, before Judge Romero.

DATED this 17 April 2026.

_____
Chief Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah